# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| LIQUID CAPITAL EXCHANGE, INC., a Delaware corporation, | No. 20-CV-89 CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| BDC GROUP, INC., an Iowa corporation, | |
| Defendant, | |
| and | |
| Y.E.W. CONSTRUCTION, INC., | |
| Defendant-Intervenors. | |
| BDC GROUP, INC., an Iowa corporation, | |
| Third-Party Plaintiff, | |
| vs. | |
| TRIPLE B CONSULTING, a Wyoming company, | |
| Third-Party Defendant. | |

This matter is before the Court on the parties' motions in limine. (Docs. 115, 117). The parties timely resisted each other's motions. (Docs. 121, 122). For the following reasons, the Court grants in part, denies in part, and holds in abeyance in part the parties' motions in limine.

## I. BACKGROUND

MidAmerican Energy ("MidAmerican"), a utility company, contracted with BDC to install underground fiberoptic cables. (Doc. 64-3, at 5–6). Defendant BDC then subcontracted part of the fiberoptic cable project to Triple B Consulting ("Triple B") (the "Subcontract"). (*Id.*, at 14–21). The Subcontract states that BDC may withhold payment from Triple B if BDC finds that doing so is "necessary to protect itself against claims, damages, losses or expenses" from a list of potential issues. (*Id.*, at 15–16).

Triple B invoiced BDC for work performed under the Subcontract. Triple B then sold invoices to Liquid Capital Exchange, Inc. ("plaintiff"), assigning it the accounts receivable sums owed on those invoices. (Doc. 66). In turn, BDC sent emails to plaintiff approving the invoices for payment or processing. (Doc. 75-2, at 8). Plaintiff calls these emails "Estoppel E-mails." (Doc. 75-2). Once it received an Estoppel E-mail, plaintiff funded Triple B, expecting BDC to pay plaintiff. (*Id.*). But, BDC did not pay plaintiff for ten of the invoices totaling $468,131.59. (*Id.*). BDC asserted Triple B failed to perform as required under the Subcontract for numerous reasons and submitted invoices for incomplete work. (Doc. 64-3, at 7, 23, 26). BDC alleges it spent $1,340,041.34 to complete or correct Triple B's work performed under the Subcontract. (*Id.*, at 26). BDC seeks offset or recoupment of these funds against any claim by plaintiff for payment on the ten invoices.

## II. PROCEDURAL BACKGROUND

On September 11, 2020, plaintiff sued defendant BDC for promissory estoppel, breach of contract, unjust enrichment, and breach of duty to pay. (Doc. 1); *see also* (Doc. 66) (containing plaintiff's amended complaint). On October 6, 2020, BDC filed an answer, a third-party complaint against Triple B for breach of contract, and an

2

alternative counterclaim against plaintiff for breach of contract. (Doc. 7). The Court later dismissed BDC's counterclaim against plaintiff for failure to state a claim. (Doc. 27).

On December 10, 2020, Triple B filed an answer and counterclaim against BDC for breach of contract and intentional interference with a contract. (Doc. 26). On December 22, 2020, BDC filed an answer to Triple B's counterclaim and an amended third-party complaint against Triple B for breach of contract. (Doc. 32); *see also* (Doc. 43) (containing BDC's second amended answer). On December 28, 2020, Triple B filed an answer to BDC's third-party complaint. (Doc. 36).

By November 2021, however, Triple B and its corporate representative ceased communicating with its attorney. (Doc. 89). On December 7, 2021, the Court granted Triple B's attorney's motion to withdraw and ordered Triple B to have new counsel enter an appearance because a corporation cannot represent itself in federal court. (Doc. 92). Triple B did not respond. On December 29, 2021, the Court entered a show cause order directing Triple B to respond for why the Court should not impose a sanction of finding it in default for its failure to respond and scheduled a show cause hearing for February 1, 2022. (Doc. 97). Triple B did not respond and did not appear at the hearing. On February 3, 2022, the Court found Triple B in default for failure to respond to court orders and have an attorney enter an appearance on behalf of the corporation, and entered default judgment against Triple B and in favor of defendant. (Doc. 103).

On March 14, 2022, defendant BDC filed a motion in limine seeking an order barring two categories of evidence. (Doc. 115). On the same day, plaintiff filed a motion in limine seeking an order barring ten categories of evidence. (Doc. 117). The Court will address each argument in turn.

3

### III. DISCUSSION

#### A. *Defendant BDC's Motion in Limine*

As noted, plaintiff seeks to bar two categories of evidence: (1) "any evidence or argument regarding BDC Group's financial condition or [plaintiff's] claim for punitive damages unless and until [plaintiff] makes a prima facie showing sufficient to support punitive damages"; and (2) "any evidence or argument that BDC Group waived it rights to object to invoices from Triple B." (Doc. 115).

##### 1. *BDC's Financial Condition and Punitive Damages*

Defendant BDC seeks an order barring evidence and argument about its financial condition and plaintiff's claim for punitive damages "unless and until [plaintiff] makes a prima facie showing sufficient to support punitive damages under Iowa Code § 668A.1(a)." (Doc. 115, at 1–2). Plaintiff does not resist BDC's motion "to the extent that BDC seeks to exclude evidence of BDC's financial condition until the jury determines, through special interrogatories, that [plaintiff] is entitled to an award of punitive damages." (Doc. 121, at 1–2 (emphasis omitted)). Plaintiff resists BDC's motion to the extent it seeks to bar evidence or argument regarding plaintiff's claim for punitive damages, asserting that such evidence is necessary for the jury to determine if plaintiff is entitled to punitive damages. (*Id.*, at 2).

Until and unless the jury finds plaintiff has made a prima facie showing that it is entitled to punitive damages, evidence of BDC's financial condition is irrelevant (FED. R. EVID. 402) and any probative value would be substantially outweighed by the danger of unfair prejudice (FED. R. EVID. 403). *See, e.g.*, *Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, No. 13-CV-4106-CJW, 2017 WL 752282, at *10 (N.D. Iowa 2017) (granting motion in limine and barring evidence of defendant's financial condition

4

until and unless plaintiff made prima facie showing it was entitled to punitive damages); *Pfab v. United Wisconsin Ins. Co.*, No. C10–1024, 2012 WL 860321, at *5 (N.D. Iowa Mar. 13, 2012) ("The Court agrees that evidence regarding [defendant's] financial condition may only be introduced after [plaintiff] makes a *prima facie* showing for recovery of punitive damages."). Accordingly, although plaintiff may offer evidence showing and argue that it is entitled to punitive damages, plaintiff may not offer evidence of BDC's financial condition until and unless the jury returns a special interrogatory indicating that plaintiff is entitled to punitive damages.

Thus, the Court **grants** defendant BDC's motion in limine on this ground.

### *2. BDC's Waiver of Objections to Triple B Invoices*

Defendant BDC seeks an order barring evidence and argument that BDC waived its right to object to invoices from Triple B on the grounds that it would be irrelevant and likely to cause confusion, and thus barred by Rules 401, 402, and 403 of the Federal Rules of Evidence. (Doc. 115, at 2–3). BDC argues that waiver is an affirmative defense and plaintiff did not plead an affirmative defense of waiver. (*Id.*, at 2). BDC further argues that the default judgment against Triple B means that any waiver argument it had has forfeited and plaintiff therefore cannot argue vicariously that Triple B would have had a waiver argument. (*Id.*, at 2–3). BDC asserts that its claims that it satisfied its obligations under the Subcontract and is excused from any payments it owed Triple B are "now deemed proven" by way of the default judgment. (*Id.*, at 3). Plaintiff resists, arguing that, as plaintiff it does not plead affirmative defenses and that BDC has otherwise been on notice of plaintiff's waiver argument through its amended complaint. (Doc. 121, at 2–3). Plaintiff also argues that as assignee of the ten invoices at issue here, it

5

assumed Triple B's rights including a claim of waiver. (*Id.*, at 3–4). Last, plaintiff argues that Triple B's default is not binding on plaintiff. (*Id.*, at 4).

The Court agrees with plaintiff that, as plaintiff it was not required to plead affirmative defenses and that it did plead in its amended complaint that BDC waived its right to contest the ten invoices. The Court also agrees that, as assignee to those ten invoices, plaintiff assumed the rights under those invoices including any waiver argument Triple B could have asserted. Last, the Court entered default judgment against Triple B as to BDC's claims against it. It follows that BDC's claims against Triple B have been proven, as to Triple B. Plaintiff was not a party to the cross-claim BDC made against Triple B, however, and therefore is not bound by Triple B's default.

The Court rejects BDC's argument that the jury will be confused. First, the jury need not know, or care, about the default judgment against Triple B. That judgment does not affect the rights of the parties remaining in this suit or affect their claims against each other. The jurors will not be confused about the effect of the default judgment if they do not hear of it. Further, to the extent that the parties offer evidence about the default judgment, the Court's jury instructions can clear up any potential for confusion by the jurors.

Thus, the Court **denies** defendant BDC's motion in limine on this ground.

### B. *Plaintiff's Motion in Limine*

Plaintiff seeks an order barring: (1) any defenses of alleged recoupment damages BDC incurred as a result of Triple B's performance; (2) BDC from characterizing or referring to itself as a victim, an innocent party, a loser, the losing party, or the like; (3) summary exhibits, spreadsheets or charts related to recoupment damages; (4) evidence or argument related to Jason Bentley's job performance or separation from

6

BDC; (5) comments on plaintiff not calling witnesses on its witness list; (6) evidence or argument on plaintiff's financial status, Triple B's financial status, or Triple B's credit worthiness; (7) evidence or argument on the number and location of plaintiff's attorneys; (8) evidence and argument on plaintiff's election of remedies; (9) evidence and argument that plaintiff does not have standing to assert its claims against BDC, and (10) evidence and argument that plaintiff has allowed Triple B to accumulate debt.  (Docs. 117, 117-1).

### *1.     BDC's Recoupment Damages Claim Against Triple B*

Plaintiff argues that evidence of BDC's alleged damages caused by Triple B's conduct is inadmissible because it is irrelevant and unfairly prejudicial.  (Doc. 117-1, at 5–18).  If the Court permits any such evidence, plaintiff argues the evidence should be limited to the ten invoices in dispute.  These are the same arguments plaintiff made in its motion to bifurcate trial (Doc. 109), although plaintiff fleshes out the argument a little more here.  In resistance, defendant BDC makes essentially the same arguments it made in resisting plaintiff's motion to bifurcate and asserts that any issue of waiver and recoupment is a fact question for the jury to decide.  (Doc. 122, at 2–8).

The Court ruled on this matter already in its order denying plaintiff's motion to bifurcate the trial.  (Doc. 119).  The Court found that BDC's claim that it is entitled to recoupment damages against Triple B is relevant, but only so long as it is limited to the ten invoices at issue here.  The Court further found that, thus limited, the probative value of this evidence outweighs the danger of unfair prejudice.  Whether BDC waived its right to seek recoupment, as plaintiff claims, will be for the jury to decide.  The Court's instructions will guide the jury through its decision-making process and will instruct the

7

jury that it cannot reach the issue of alleged recoupment damages if it finds that BDC waived its right to seek recoupment.

Thus, the Court **grants in part** plaintiff's motion in limine on this ground; recoupment damage evidence will be admissible, but only tied to the ten invoices in dispute here.

### 2. *BDC as Victim*

Plaintiff seeks an order barring BDC from referring to itself as a victim, or in similar terms, citing Rule 37(c)(1) of the Federal Rules of Civil Procedure and Rules 401 and 403 of the Federal Rules of Evidence. (Doc. 117-1, at 18). Though plaintiff cites Rule 37(c)(1), in its brief it fails to explain how this discovery sanctions rule has anything to do with this issue. Plaintiff argues the evidence would be irrelevant and thus barred under Rule 401,[1] and would be unfairly prejudicial and should be barred under Rule 403. (*Id.*). Defendant BDC argues that it "has no intention to characterize itself as a victim or a loser." (Doc. 122, at 8). BDC asserts, however, that it should be permitted to introduce evidence to show that it suspended payment on the invoices because of Triple B's poor performance and failure to pay subcontractors. (*Id.*).

As BDC does not resist the motion in limine on this ground, it will be granted. Plaintiff's motion in limine did not seek to bar evidence about why BDC suspended payments on the invoices, so the Court will not address the admissibility of such evidence here.

Thus, the Court **grants** plaintiff's motion in limine on this ground.

---

[1] Rule 401 defines relevant evidence. Rule 402 bars admission of irrelevant evidence.

### *3. Summary Exhibits on Recoupment Damages*

Plaintiff seeks to bar BDC from using a summary exhibit to present evidence of its alleged recoupment damages under Rule 1006 of the Federal Rules of Evidence. (Doc. 117-1, at 18–21). Defendant BDC recognizes that the Court addressed this issue in its ruling on plaintiff's motion to bifurcate trial. (Doc. 122, at 8).

The Court did rule on this issue already (Doc. 119) and its ruling remains the same here. The Court is not in any position to determine the admissibility of the summary exhibit under Rule 1006 at this time. The Court's order limiting BDC's recoupment evidence to the ten disputed invoices requires BDC to rework its summary exhibit. Further, although plaintiff claims BDC has failed to disclose the underlying evidence supporting the summary exhibit, the Court has neither the summary exhibit to review nor specific information from plaintiff about the alleged defects in BDC's failure to disclose the underlying evidentiary support.

Thus, the Court **holds in abeyance** its ruling on this ground.

### *4. Jason Bentley's Job Performance and Separation from BDC*

Plaintiff seeks an order barring any evidence or argument about Jason "Jake" Bentley's job performance or separation from BDC, citing Rule 37(c)(1) of the Federal Rules of Civil Procedure, and Rules 401 and 403 of the Federal Rules of Evidence. (Doc. 117-1, at 21–23). Plaintiff alleges that BDC refused to produce discovery relating to Bentley and so such evidence should be barred as a discovery sanction. (*Id.*, at 21–22). Alternatively, plaintiff asserts any such evidence is irrelevant and the danger of unfair prejudice would substantially outweigh any probative value because BDC would use it to attack Bentley's character in "an impermissible attempt to solicit an emotional response from the jury[.]" (*Id.*, at 23). Defendant BDC asserts that it "does not intend

9

to offer any portions of Jake Bentley's personnel file as evidence at trial" but argues that it should "be allowed to offer testimony regarding Bentley's separation from the company." (Doc. 122, at 8). BDC argues that those are separate issues and the circumstances of Bentley's separation are relevant to show he is a disgruntled former employee. (*Id.*, at 8–9). To the extent that plaintiff argues it was not provided with discovery about this matter, BDC counters that plaintiff could have asked BDC's corporate representative about it during his deposition or depose others about the issue. (*Id.*).

Generally speaking, motions in limine are not the proper vehicle for addressing discovery violations. The Federal Rules of Civil Procedure permit the district court to set deadlines for the progression of discovery and sanction a party for failing to meet those deadlines. *See Firefighters' Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 902 (8th Cir. 2000) (citing *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998)); *see also* FED. R. CIV. P. 16(b), (f); 26(a)(2). If a party fails to timely disclose information contemplated by Rules 26(a) and (e), the Court "has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The Court "may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Id.*; FED. R. CIV. P. 37(c)(1).

When a party fails to comply with discovery obligations, the opposing party may file a motion to compel discovery. If discovery is still not forthcoming, then seeking sanctions under Rule 37 may be appropriate. Thus, the proper mechanism for plaintiff to challenge BDC's objections was to file a motion to compel under Federal Rule of Civil Procedure 37. *See* FED. R. CIV. P. 33 advisory committee's note to 1970 amendment

10

("If objections are made, the burden is on the interrogating party to move under Rule 37(a) for a court order compelling answers, in the course of which the court will pass on the objections."); FED. R. CIV. P. 37 advisory committee's note to 1970 amendment ("The changes now made in Rules 33 and 37(a) make it clear that the interrogating party must move to compel answers, and the motion is provided for in Rule 37(a)."). The idea behind the discovery rules and motions to compel is to use discovery, and the court's enforcement of the discovery rules, to get at the truth. It is improper for a party to propound discovery, dislike the response, but sit on the matter and lie in wait until trial to raise the issue for the first time.

Here, there is no evidence that plaintiff ever moved to compel disclosure of this evidence during the discovery stage in this case or fully availed itself of its ability to question BDC witnesses about the matter. Because a motion to compel is the proper mechanism for addressing discovery objections, it follows that a motion in limine is an improper mechanism for litigating discovery disputes. *See Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d 1093, 1095 (C.D. Cal. 2012) (noting that it is improper to move in limine "[a]s a substitute for motions to compel discovery or for discovery sanctions that should have been brought earlier"). In short, the time to challenge a failure to produce discovery is during the discovery stage of litigation. Here, plaintiff did not do so and did not raise this issue in a timely manner, so the Court will not impose sanctions under Rule 37(c)(1).

Motions in limine, in contrast, are designed to seek pretrial rulings from the Court on the admissibility of evidence under the Federal Rules of Evidence. Black's Law Dictionary defines a motion in limine as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Motion in Limine*, BLACK'S LAW

11

DICTIONARY (10th ed. 2014). "In limine" is Latin for "at the outset." *In Limine*, BLACK'S LAW DICTIONARY, *supra*. Or, in other words, a motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

The Federal Rules of Evidence do not expressly authorize motions in limine, but district courts can rule on pretrial evidentiary motions under their "inherent authority to manage the course of trials." *Luce*, 469 U.S. at 40 n. 4. Pretrial rulings on evidentiary issues avoids the futile attempt to "unring the bell" when jurors see or hear inadmissible evidence, even when it is stricken from the record. *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (Berzon, J. dissenting). It may also save time by minimizing side-bar conferences and other trial disruptions and by preventing the need to call some witnesses. *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002); *see also Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) ("[A] motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.").

Here, plaintiff argues that Bentley's job performance and separation from BDC is irrelevant and unfairly prejudicial, and therefore inadmissible under Rules 401 and 403 of the Federal Rules of Evidence. (Doc. 117-1, at 21). Plaintiff also argues the evidence would "tarnish Mr. Bentley's character," and thereby suggesting that the evidence would be improper character evidence under Rule 404. (*Id.*). BDC has stated that it will not offer portions of Bentley's personnel file into evidence, but does assert it is allowed to offer evidence of Bentley's separation from BDC to show he is a disgruntled former employee. (Doc. 122, at 8). The parties' are at best vague about Bentley and

12

his separation from BDC. Without knowing precisely the terms and circumstances of Bentley's separation from BDC, the Court is in no position to assess the probative value of the evidence and the extent to which it may be unfairly prejudicial. If he left under bad terms, was forced to resign, or was threatened with being fired, then his impartiality as a witness may rightfully be called into question. Under these circumstances, it would generally be proper to allow some evidence to show that Bentley was biased against BDC because of his past experience as an employee of BDC. Until the Court is apprised in more detail about what evidence is at issue, however, it is not in a position to make an informed ruling.

Thus, the Court **grants in part and holds in abeyance in part** plaintiff's motion in limine on this ground. The motion is granted to the extent that defendant BDC cannot offer evidence about Bentley's job performance, but is held in abeyance in part as to evidence surrounding his separation from BDC.

### 5. *Comments on Uncalled Witnesses*

Plaintiff seeks an order barring BDC from commenting on plaintiff's decision not to call any witness on its witness list, citing Rules 401 and 403 of the Federal Rules of Evidence. (Doc. 117-1, at 23). Plaintiff also seeks an order barring defendant from making "any suggestions to the jury, by argument or otherwise, of what would have been the testimony of any witness not actually called[.]" (*Id.*). Defendant BDC does not resist plaintiff's motion in limine on this ground. (Doc. 122, at 9).

Thus, the Court **grants** plaintiff's motion on this ground.

### 6. *Plaintiff's Financial Status and Triple B's Financial Status and Credit Worthiness*

Plaintiff seeks an order barring evidence of its financial status and Triple B's financial status or credit worthiness, arguing the evidence is irrelevant and unfairly

13

prejudicial. (Doc. 117-1, at 23–24). Defendant BDC does not resist plaintiff's motion on this ground other than to assert that it should be permitted to present evidence that plaintiff "knew financing Triple B might present risks." (Doc. 122, at 9).

Thus, the Court **grants** plaintiff's motion on this ground. As plaintiff did not seek an order barring evidence that it knew financing Triple B might present risks, the Court takes no position on such evidence at this time.

### 7. *Number and Location of Attorneys*

Plaintiff seeks an order barring evidence, argument, or comment on the number of attorneys representing plaintiff, the size of the law firms to which they belong, or where the attorneys are from, arguing the evidence is irrelevant and unfairly prejudicial. (Doc. 117-1, at 24). Defendant BDC does not resist plaintiff's motion in limine on this ground. (Doc. 122, at 9).

Thus, the Court **grants** plaintiff's motion in limine on this ground.

### 8. *Plaintiff's Election of Remedies*

Plaintiff seeks an order barring evidence and argument about any actions plaintiff took or did not take to collect from Triple B rather than BDC, asserting the evidence is irrelevant and unfairly prejudicial. (Doc. 117-1, at 25). Defendant BDC resists, asserting that plaintiff's other remedies are relevant to plaintiff's claim of promissory estoppel, in which one factor considered is the availability and adequacy of other remedies. (Doc. 122, at 9–10). BDC cites *Warder & Lee Elevator, Inc. v. Britten*, 274 N.W.2d 339, 343 (Iowa 1979), for the proposition that "the availability and adequacy of other remedies, particularly cancellation and restitution" are among the significant circumstances to be considered in determining whether injustice can be avoided only by enforcement of the promise. (*Id.*).

14

Here, the Court finds that whether plaintiff had other remedies against Triple B is relevant to the merits of its promissory estoppel claim. *See Warder & Lee Elevator*, 274 N.W.2d at 343; *Kolman v. Roth*, 656 N.W.2d 148, 156 n.4 (Iowa 2003) (describing the Iowa Supreme Court as adopting in *Warder & Lee Elevator* "the availability and adequacy of other remedies, particularly cancellation and restitution" as a "significant circumstance[ ] to consider in determining whether injustice can be avoided only by enforcing the promise"). So, too, is it relevant that BDC had options to collect damages from Triple B by suing it, as it has done here. Further, evidence and argument about other remedies is not unfairly prejudicial because it will not be a surprise to the jury that either party could have sought legal recourse against Triple B as the party blamed by BDC for causing the dispute at hand by allegedly failing to perform as required by the contract.

Thus, the Court **denies** plaintiff's motion in limine on this ground.

### 9. *Plaintiff's Standing to Assert Claims Against BDC*

Plaintiff seeks an order barring evidence and argument that plaintiff does not have standing to assert its claims against BDC or that Triple B could not assign its rights to payment on the ten invoices to plaintiff, arguing they lack legal merit and are therefore irrelevant. (Doc. 117-1, at 25–27). Defendant BDC does not object to plaintiff's motion in limine on this ground. (Doc. 122, at 10).

Thus, the Court **grants** plaintiff's motion in limine on this ground.

### 10. *Plaintiff Allowing Triple B to Accumulate Debt*

Plaintiff seeks an order barring evidence and argument that plaintiff has allowed Triple B to accumulate debt, asserting that it "would not only be wrong as a matter of law, but also highly prejudicial." (Doc. 117-1, at 27–28). Plaintiff explains that in

15

answers to interrogatories BDC stated that the basis for its affirmative defenses of laches and acquiescence was that plaintiff "allowed Triple B to accumulate additional debt when [plaintiff] should have known Triple B's performance on the project was unacceptable." (*Id.*, at 27). Plaintiff argues that BDC's "theory is factually wrong and irrelevant." (*Id.*). Defendant BDC does not resist plaintiff's motion in limine on this ground. (Doc. 122, at 10).

Thus, the Court **grants** plaintiff's motion in limine on this ground.

### IV. CONCLUSION

For the above reasons, the Court grants in part, denies in part, and holds in abeyance in part the parties' motions in limine, as follows:

*A. Defendant BDC's Motion in Limine*

The Court:

1. **Grants** BDC's motion as to BDC's financial condition and plaintiff's claim for punitive damages;
2. **Denies** BDC's motion as to BDC's waiver of the right to object to Triple B invoices.

*B. Plaintiff's Motion in Limine*

The Court:

1. **Grants in part** plaintiff's motion as to alleged recoupment damages BDC incurred for alleged "rework," permitting such evidence so long as it is limited to the ten invoices at issue here;
2. **Grants** plaintiff's motion as to BDC characterizing itself as a victim;
3. **Holds in abeyance** plaintiff's motion as to summary exhibits on recoupment damages;

16

4. **Grants in part and holds in abeyance in part** plaintiff's motion as to Jason Bentley's job performance and separation from BDC;

5. **Grants** plaintiff's motion as to comments on plaintiff's uncalled witnesses;

6. **Grants** plaintiff's motion as to plaintiff's financial status, Triple B's financial status, and Triple B's credit worthiness;

7. **Grants** plaintiff's motion as to the number and location of attorneys;

8. **Denies** plaintiff's motion as to plaintiff's election of remedies;

9. **Grants** plaintiff's motion as to plaintiff's standing to assert its claims against BDC, and

10. **Grants** plaintiff's motion as to plaintiff allowing Triple B to accumulate debt.

**IT IS SO ORDERED** this 24th day of March, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa