**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| LIQUID CAPITAL EXCHANGE, INC., | No. 20-CV-89 CJW-MAR |
| Plaintiff, | **ORDER** |
| vs. | |
| BDC GROUP, INC., | |
| Defendant. | |

_____

## TABLE OF CONTENTS

I.     BACKGROUND ............................................................................ 3

II.    ATTORNEYS' FEES ................................................................... 4

    A.     Entitlement to Attorneys' Fees............................................... 4

        1.     Breach of Subcontract Claim ........................................... 5

        2.     Other Claims by Common-Law Attorneys' Fees..................... 6

    B.     Waiver ............................................................................ 7

    C.     Merits ............................................................................ 8

    D.     Amount of Attorneys' Fees...................................................11

        1.     Reasonable Hourly Billing Rates ......................................13

        2.     Hours Charged ............................................................14

            a.     Overstaffing .......................................................15

    b.  YEW and Triple B ...............................................16

    c.  Redundant, Repetitive, and Excessive Pretrial Filings ......18

   3.  Accounting for Other Claims in Reasonableness ...................18

III. RECOVERING COSTS ..................................................................21

 A. Waiver ...............................................................................22

 B. Entitlement .........................................................................24

IV. CONCLUSION .............................................................................26

2

This matter is before the Court on plaintiff's motion for attorneys' fees. (Doc. 167). Defendant timely resists this motion. (Doc. 170). Plaintiff timely replied. (Doc. 175). For the following reasons, the Court awards plaintiff **$641,780.80** in attorneys' fees and taxes **$1,893.05** in costs for plaintiff.

## I.   *BACKGROUND*

The Court incorporates the factual background as discussed in its prior orders. (Doc. 85). In short, Triple B worked for defendant under a subcontractor agreement ("Subcontract") (Doc. 161-47). Triple B sent invoices ("Invoices") for its work to defendant and assigned its right of payment on those Invoices to plaintiff. (Doc. 66). In turn, defendant sent emails to plaintiff succinctly approving the Invoices for payment or processing. (Doc. 75-2, at 8). Plaintiff calls these emails "Estoppel E-mails." (Doc. 75-2). Once plaintiff received an Estoppel Email, it funded Triple B, purportedly expecting defendant to pay plaintiff. (*Id.*). Defendant, however, did not pay plaintiff under some of the Invoices. (*Id.*).

Plaintiff sued to recover defendant's purportedly–owed payments. (Doc. 66). After the Court resolved Triple B's motion for summary judgment against defendant (Doc. 74), plaintiff moved for summary judgment for breach of the Estoppel Email contracts, breach of the Subcontract, and promissory estoppel. (Doc. 75). The Court denied plaintiff's motion for summary judgment on those claims, as well as plaintiff's motion for reconsideration on the same. (Docs. 80; 88; 100).

This matter was tried before a jury on April 18–22, 2022. (Doc. 163). Defendant moved for a directed verdict, which the Court denied. (Doc. 176). The jury entered a verdict in favor of plaintiff on all counts: breach of contracts, promissory estoppel, fraudulent inducement, breach of subcontract, and breach of duty to pay assignee. (Doc. 163). It awarded compensatory damages of $468,141.59 and punitive damages of $760,000. (Doc. 165).

3

Plaintiff filed this motion for $713,736.00 in attorneys' fees and $42,149.25 in costs. (Doc. 167, at 3). For the reasons below, the Court reduces plaintiff's requested fee award by $71,955.20 to **$641,780.80.** The Court also taxes **$1,893.05** in costs for plaintiff.

## II. ATTORNEYS' FEES

### A. Entitlement to Attorneys' Fees

Plaintiff argues that it is entitled to attorneys' fees as the prevailing party on the Breach of Subcontract Claim because the Subcontract states in relevant part that either party is "entitled to recovery of its costs and expenses, including reasonable attorneys' fees and expenses, incurred in enforcing its rights under this Agreement." (Doc. 167-1, at 3). Plaintiff also argues that it is entitled to common law attorneys' fees for all of its claims, because the losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (*Id.*). In the alternative, absent common law attorneys' fees, plaintiff argues that it is entitled to attorneys' fees for all of the claims because the Breach of Subcontract Claim is inextricably intertwined with the other claims. (*Id.*, at 5-6).

Defendant resists with several arguments. (Doc. 170). First, defendant asserts that plaintiff is not entitled to attorneys' fees as the prevailing party on the Breach of Subcontract Claim. (Doc. 170, at 7). Defendant then argues that plaintiff has waived its claim to common-law-attorneys' fees. (Doc. 170, at 4). Defendant argues in the alternative that plaintiff is not entitled to common-law-attorneys' fees because defendant's actions did not "rise to the level of oppression or connivance to harass or injure another." (Doc. 170, at 4). Defendant also asserts that plaintiff is not entitled to attorneys' fees for all of the claims based off its entitlement to attorneys' fees for the Breach of Subcontract Claim because these claims are "not inextricably entwined." (Doc. 170, at 9-10).

4

### 1.    *Breach of Subcontract Claim*

The Court finds that plaintiff is entitled to reasonable attorneys' fees arising out of the breach of subcontract claim.   "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court."   Iowa Code § 625.22. Here, the Subcontract provides that "[e]ither Party shall be entitled to recovery . . . including reasonable attorneys' fees and expenses, incurred in enforcing its rights under this Agreement."   (Doc. 161-47 at 7).   Parties dispute, however, whether plaintiff acquired this entitlement when Triple B assigned its "right, title and interest in and to certain Accounts" to plaintiff in the Factoring Agreement.   (Doc. 170, at 7-8).   For the following reasons, the Court finds that plaintiff was entitled to this reasonable attorneys' fee right.

Defendant asserts that plaintiff did not acquire the entitlement to recovery of its costs and expenses because the Court agreed with plaintiff in a prior Order that plaintiff did not receive the right to attorneys' fees under the Subcontract.   (Doc. 170, at 7) (citing Doc. 27, at 5).   The Court, however, does not read its prior analysis of the Factoring Agreement to shear the right for attorneys' fees from the right to payment.   In its earlier Order, the Court did not find that Triple B assigned only a subset of rights to plaintiff. (Doc. 27, at 5).   Instead, the Court analyzed whether Triple B assigned its rights *and* its obligations to plaintiff.   (*Id.*).   There, the Court concluded defendant did not show plaintiff had received Triple B's obligations, not that plaintiff had received only a subset of rights.   (*Id.*).

Defendant also asserts that plaintiff's rights as an assignee are limited by the "Notice of Assignment" by which it informed defendant of its right to collect payments. (Doc. 170, at 9).   This Notice of Assignment purportedly identifies "payments that are or become due on their accounts to [plaintiff]" and "says nothing about assigning rights

5

under the Subcontract, including rights under Paragraph 32." (*Id.*). Far from being "limited to" collecting the existing and future payments," however, the Notice of Assignment reads thus: "[t]his arrangement also *includes* the sale and assignment of all existing and future payments that are or become due on their accounts to Liquid Capital Exchange, Inc. under the Uniform Commercial Code." (Doc. 161-5, at 2) (emphasis added). The Court, thus, rejects this argument as well.[1]

For these reasons, the Court finds that plaintiff is entitled to reasonable attorneys' fees arising out of the Breach of Subcontract claim.

### 2. Other Claims by Common-Law Attorneys' Fees

Plaintiff also argues that it is entitled to common-law attorneys' fees for each of its claims. (Doc. 167-1, at 3). Defendant first asserts that plaintiff waived any claim of common-law attorneys' fees. (Doc. 170, at 3). Alternatively, defendant asserts that plaintiff cannot show that defendant's conduct was "oppressive or conniving" in the course of litigation. (*Id.*, at 3). Even if plaintiff could rely on pre-litigation conduct, defendant argues that because the Court found that the question of "punitive damages" was a close call, plaintiff cannot show the higher standard required for common-law attorneys' fees. (*Id.*, at 6).

For the following reasons, the Court **denies** plaintiff's request for common-law attorneys' fees on each and every of its claims. Although plaintiff did not waive its common-law attorneys' fees request, the Court can only rarely award common-law attorneys' fees based solely on pre-litigation conduct. Here, the Court does not find any

---

[1] The Court reads plaintiff's precedent to be inapplicable, as they discuss whether the Fair Debt Collection Practices Act allows the assignment of reasonable attorneys' fees. *Munoz v. Pipestone Fin., LLC*, CIV No. 04-4142 JNE/SRN, 2006 WL 2786911, at *6 (D. Minn. Sept. 26, 2006); *Kirscher v. Messerli & Kramer, P.A.*, No. CIV. 05-1901PAMRLE, 2006 WL 145162, at *5 (D. Minn. Jan. 18, 2006).

conduct before or during the litigation that merits an award of common-law attorneys' fees.

**B.     Waiver**

The Court rejects defendant's argument that plaintiff waived its claim for common-law attorneys' fees by failing to raise them in the pleadings.  (Doc. 170, at 3).   Though Iowa law requires a claim for attorneys' fees to be specifically pleaded, *Nelson Cabinets, Inc. v. Peiffer*, 542 N.W.2d 570, 573 (Iowa Ct. App. 1995), Federal Rule of Civil Procedure 54(c) provides that final judgments other than default judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."   FED. R. CIV. P. 54(c).

A federal court sitting in diversity must apply state substantive law and federal procedural law.   *Woods Masonry, Inc. v. Monumental Gen. Cas. Ins. Co.*, 198 F. Supp. 2d 1016, 1039 (N.D. Iowa 2002) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).   Pleading rules are procedural.   *Sayre v. Musicland Grp., a Subsidiary of Am. Can Co.*, 850 F.2d 350, 352 (8th Cir. 1988); *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698–99 (8th Cir. 1979); *Nelson v. J.C. Penney Co.*, 75 F.3d 343, 347 (8th Cir. 1996).   Therefore, the Federal Rules of Civil Procedure govern this issue.

The Federal Rules of Civil Procedure do not require parties to demand attorneys' fees in their pleadings before filing a motion for attorneys' fees.   Rule 54(d)(2)(A) requires claims for attorney's fees to "be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."   FED. R. CIV. P. 54(d)(2)(A).   Further, Rule 54(d)(2)(B) sets out the required timing and contents of the motion.   FED. R. CIV. P. 54(d)(2)(B).   In addition, Rule 54(c) provides that "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."   FED. R. CIV. P. 54(c).   For these

7

reasons, then, the Court finds that plaintiff did not waive its claim for common-law attorneys' fees.

###### C.    Merits

Rules governing the right to attorneys' fees are substantive for *Erie* purposes, so the Court applies state law. *Woods Masonry*, 198 F. Supp. 2d at 1039 (collecting cases). In a diversity case "where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975); *Lamb Eng'g & Const. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1434 (8th Cir. 1997) (collecting cases).

In Iowa, "a plaintiff seeking common law attorney fees must prove that the culpability of the defendant's conduct . . . rise[s] to the level of oppression or connivance to harass or injure another." *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc.*, 510 N.W.2d 153, 159–60 (Iowa 1993); *see also E. Iowa Plastics, Inc. v. PI, Inc.*, 889 F.3d 454, 457–58 (8th Cir. 2018). Conduct is oppressive when it "is 'difficult to bear, harsh, tyrannical, or cruel.'" *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 475 (Iowa 2017) (cleaned up) (quoting *Hockenberg*, 510 N.W.2d at 159). Connivance "requires voluntary blindness [or] an intentional failure to discover or prevent the wrong." *Id.* (cleaned up) (alteration in original). Such conduct is "[m]ore than mere bad faith," *Thornton*, 897 N.W.2d at 475, and must be more extreme than the "willful and wanton disregard for the rights of another" required for punitive damages. *Hockenberg*, 510 N.W.2d at 159–60 (referring to Iowa's punitive damages statute, IOWA CODE § 668A.1). Determination of common-law attorneys' fees lies within the equitable power of the court. *Hockenberg*, 510 N.W.2d at 158.

8

The Supreme Court of Iowa found "oppressive or conniving conduct" when a plaintiff sought to defeat a defendant's affirmative defense of reliance by fabricating two letters and offering those letters as evidence at trial. *Williams v. Van Sickel*, 659 N.W.2d 572, 575 (Iowa 2003); *E. Iowa Plastics*, 889 F.3d at 457–58 (collecting cases). The Iowa Court of Appeals analogized between *Van Sickel* and its own case in which it found "connivance" in a dispute when a party participated in ongoing efforts to obfuscate financial holdings for fraudulent purposes, and advanced unbelievable positions in court to accomplish this end. *Olson v. Elsbernd*, 795 N.W.2d 99, *5-7 (Iowa Ct. App. 2010).

Plaintiff, however, rests its case for common-law attorneys' fees solely on defendant's prelitigation conduct. (Doc. 167-1, at 4–5). The Court cannot award common-law attorneys' fees on this basis under either federal law or Iowa law.

Federal courts sitting in diversity may award common-law attorneys' fees if permitted by either federal law or state law. *Lamb En'g & Const. Co.*, 103 F.3d at 1434. Under federal law, federal courts have an inherent power to award common-law attorneys' fees for bad faith "conduct both during and prior to the litigation" but cannot award these fees "'based solely on the conduct that led to the substantive claim.'" *Id.*, at 1435 (collecting cases); *see, e.g.*, *Kelly v. Golden*, 352 F.3d 344, 352 (8th Cir. 2003) ("The power to award fees is exercisable only with respect to conduct occurring during the litigation, not conduct that gave rise to the cause of action."). Because plaintiff points solely to pre-litigation conduct, the Court cannot award common-law attorneys' fees under its federal powers. Further, the Court did not observe bad faith conduct from either party during the litigation that merited common-law attorneys' fees. Both parties litigated their cases ably and with respect for the Court and the jury.

The next question is whether the Court can award common-law attorneys' fees based solely on prelitigation conduct under Iowa law. The majority of Iowa law on common-law attorneys' fees considers both prelitigation and litigation conduct.

9

*Hockenberg*, 510 N.W.2d at 155, 160 (considering a party's breach of a prior settlement contract and that party's continued breach of the contract in the present litigation despite a temporary injunction); *Thornton*, 897 N.W.2d at 475 (denying common-law attorneys' fees when neither prelitigation or litigation behavior rose to the level of oppression or connivance); *Van Sickel*, 659 N.W.2d at 581 (granting common-law attorneys' fees when the defendant fabricated evidence at trial); *Olson*, 795 N.W.2d at *5 (considering conduct during or after litigation "designed to harass and prevent [a party] from satisfying a money judgment awarded to [it].")"; *but see Hoeppner v. Holladay*, 741 N.W.2d 823, at *5 (Iowa Ct. App. 2007) (considering solely prelitigation conduct in awarding common-law attorneys' fees); *but see Wolf v. Wolf*, 690 N.W.2d 887, 896 (Iowa 2005) (considering a party's violation of past court orders).

Assuming the Court could grant common-law attorneys' fees based solely on prelitigation conduct, the conduct in this case does not rise to the standard of proof set forth in *Hockenberg* and *Williams*. *See Am. Fam. Mut. Ins. Co. v. Miell*, 569 F. Supp. 2d 841, 860 (N.D. Iowa 2008). Again, oppression and connivance is "[m]ore than mere bad faith," and must be more extreme than the "willful and wanton disregard for the rights of another" required for punitive damages. *Hockenberg*, 510 N.W.2d at 159–60 (referring to Iowa's punitive damages statute, IOWA CODE § 668A.1). Here, the Court noted that the giving of the punitive damages instruction was a close case for multiple reasons. (Doc. 179, at 3). Because it was a close case whether plaintiff was entitled to punitive damages, the Court would not find that this conduct meets the "more extreme" standard for connivance.

For that reason, the Court denies common-law attorneys' fees on the remainder of plaintiff's claims.

### D.    Amount of Attorneys' Fees

Because plaintiff is entitled to some amount of attorneys' fees, the Court now addresses the amount.

Again, as a preliminary matter, because the Court sits in diversity jurisdiction, it applies state law for substantive issues. Rules governing attorneys' fees are substantive for *Erie* purposes, so the Court applies state law. *Woods Masonry*, 198 F. Supp. 2d 1016, 1039 (N.D. Iowa 2002) (collecting cases).

"Absent express statutory authorization, each party to a lawsuit ordinarily bears its own attorney fees." *Lee v. State*, 906 N.W.2d 186, 197 (Iowa 2018) (citing *Smith v. Iowa State Univ. of Sci. & Tech.*, 885 N.W.2d 620, 623 (Iowa 2016) (per curiam)). A reasonable attorneys' fee is initially calculated by multiplying the number of hours reasonably expended on the winning claims times a reasonable hourly rate. *Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 832–33 (Iowa 2009) (quotations omitted). "This calculation, known as the lodestar amount, 'is presumed to be the reasonable attorney fee envisioned by the relevant statutes.'" *Id.* The reasonableness of the hours expended and the hourly rate depends upon the facts of each case. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429–30 (1983)).

Factors normally considered in determining reasonable attorney fees include:

> [T]he time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service.

*Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 24 (Iowa 2001) (quotations omitted).

The court may make reductions for "partial success, duplicative hours, or hours not reasonably expended." *Lee*, 906 N.W.2d at 197 (quoting *Boyle*, 773 N.W.2d at 834

11

(internal quotations omitted)). The district court, however, "must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case." *Id.* "There is no precise rule or formula for making these determinations." *Id.*, at 833. Nevertheless, "[d]etailed findings of fact with regard to the factors considered must accompany the attorney fee award." *Id.* (quoting *Dutcher v. Randall Foods*, 546 N.W.2d 889, 897 (Iowa 1996)). When the documentation of hours is inadequate, the district court may reduce the award accordingly. *Smith*, 885 N.W.2d at 626 (citing *Hensley*, 461 U.S. at 433).

Parties dispute the hours charged and their rates. Defendant asserts plaintiff "overstaffed" this matter (Doc. 170, at 12), cannot assess fees for bills related to Triple B and Intervenor Y.E.W. Construction ("Y.E.W.") (Doc. 170, at 14), and asserts that much of plaintiff's bills arose from "redundant, repetitive, and excessive pretrial filings" (Doc. 170, at 15). Defendant also asserts plaintiff's attorneys and paralegals who worked solely in Florida were billed at an excess rate. (Doc. 170, at 16). Defendant also asserts that plaintiff's fees are "wildly excessive" and should be reduced on that ground as well. (Doc. 170, at 12).

Parties also dispute whether the Court should reduce the award of attorneys' fees on the grounds that plaintiff could not recover attorneys' fees for some of its successful claims. (Doc. 167-1). Plaintiff argues that the entire fee should be awarded because plaintiff's claims are inextricably intertwined. (Doc. 167-1, at 5-6) (citing *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1031 (N.D. Iowa 2010); *Lewis v. Heartland Inns of Am., LLC*, 764 F. Supp. 2d 1037, 1046 (S.D. Iowa 2011)). Defendant resists this argument, asserting that the claims are not inextricably intertwined because the promissory estoppel claim, fraud claim, and unjust enrichment claims all required different proof than the breach of contract claims. (Doc. 170, at 10).

In sum, the Court reduces plaintiff's requested fee award by a total of **$71,955.20.** It reduces the fee award by $27,785 to match out-of-town counsel and staff's hourly rates to those of Iowa rates. It reduces the fee award by another $44,170.20 to account for plaintiff's hours submitted with regard to third parties in the litigation. The Court, however, does not reduce fees on the grounds of "overstaffing" or "redundant, repetitive, and excessive pretrial filings" or on the ground of "wildly excessive fee claims." Similarly, though it is a close call, the Court does not reduce fees on the grounds that plaintiff could not recover attorneys' fees on some claims.

### 1.    *Reasonable Hourly Billing Rates*

The Court agrees with defendant's challenges to the hourly rates for Ms. Niewialkouski, Ms. Lin, and Ms. Walker. (Doc. 170, at 16–18). In all three, defendant does not challenge their qualifications or experience but only asserts that these hourly rates should have been billed at the Iowa rate, like the other members of plaintiff's staff on this case. (*Id.*). For purposes of the lodestar calculation, the Court will reduce the hourly rates for Ms. Niewialkouski, Ms. Lin, and Ms. Walker solely to reflect the Iowa legal community. In sum, to account for local counsel rates, the Court reduces plaintiff's award by $27,785.

The hourly rate is based on the "prevailing market rate[s] in the relevant community." *Boyle*, 773 N.W.2d at 833 (citing *Dutcher*, 546 N.W.2d at 896 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984))). The "relevant community" for determining hourly rates is the place where the case was tried. *Id.*, at 831 (determining the prevailing market rate in the relevant community based on "affidavits from attorneys regarding local bar charging rates"). *See also Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009); *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712 (8th Cir. 2021) ("[a]s a general rule, a reasonable hourly

13

rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'").

As a result, the Court awards fees based on the local hourly rate even for out-of-town counsel. *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). The Court may award more than the local hourly rate if plaintiff "has shown that, in spite of [its] diligent, good faith efforts, [it] was unable to find local counsel able and willing to take the case." *Id*. Here, however, plaintiff used local counsel in conjunction with out-of-town counsel. By definition, it already found local counsel able and willing to take the case and to litigate this matter before the Court.

For that reason, the Court will reduce the challenged staff's hourly rates to match their Iowa counterparts. Local counsel billed associates at $250 an hour and paralegals at $155 an hour. (Doc. 167-3, at 3). Ms. Niewialkouski billed 235.6 hours on this case at $350 an hour. (Doc. 167-2, at 7–41). After reducing her billing rate to $250 an hour, the Court reduces her fees by $23,560. Ms. Lin and Ms. Walker billed 169 hours at $180 an hour. (Doc. 167-2, at 7–41). After reducing their billing rate to $155 an hour, the Court reduces these fees by $4,225. In sum, to account for local counsel rates, the Court reduces plaintiff's award by $27,785.

### 2. *Hours Charged*

Defendant asserts plaintiff "overstaffed" this matter (Doc. 170, at 12), cannot assess fees for bills related to Triple B and Intervenor Y.E.W. Construction ("Y.E.W.") (Doc. 170, at 14), and that much of plaintiff's bills arose from "redundant, repetitive, and excessive pretrial filings" (Doc. 170, at 15). For the following reasons, the Court rejects defendant's arguments concerning overstaffing and pretrial filings.

The Court, however, will reduce fees that were expended with regard to Triple B and Y.E.W. Because the majority of these fees were mixed with entries devoted to the litigation as a whole, defendant asserts that the Court should eliminate the entirety of

14

these hours. The Court, instead, will conduct an across-the-board reduction on these hours.

### a.     Overstaffing

Although a court should not deny attorneys' fees simply because multiple attorneys were used, "[a] court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995); *see also Lee*, 906 N.W.2d at 197.

Courts have recognized and accepted the use of more than one attorney as both desirable and common. *A.J. by L.B.*, 56 F.3d at 863–64 (collecting cases); *see also Dorr v. Weber,* 741 F. Supp. 2d 1022, 1035 (N.D. Iowa 2010). A court may reduce attorneys' hours, and consequently fees, for inefficiency or duplication of services in cases when more than one attorney is used. *Id.* A court may not, however, reduce attorneys' fees solely on the basis that multiple attorneys helped to secure a prevailing party's success. *Id.* Instead, the Court must review plaintiffs' fee request to determine whether the work of the attorneys improperly duplicated each other. *Id.*

Here, defendant's arguments boil down to the fact that plaintiff used multiple attorneys, and these arguments do not identify inefficiencies or duplications apart from their communications. After reviewing the hours billed, however, the Court does not find such inefficiency or duplication of services. The Court reiterates that this was a complex matter featuring multiple counts and motions.

Further, defendant's cited precedent does not match this case. In *Dorr* and *Schutlz*, the prevailing parties used more attorneys than necessary on cases that were "a sure thing[,]" *Dorr*, 741 F. Supp. 2d at 1036, or "not complex" and "involv[ing] a single de minimis violation[,]" *Schultz v. Sw. Credit Sys., LP*, No. 16-CV-2033-LRR, 2018 WL 9988204, at *4. Unlike those cases, this case was complex, was not a sure thing, and involved multiple counts. To be sure, the Court of Appeals for the Seventh Circuit

upheld a district court's fee reduction when "the collaboration among four attorneys had inevitably led to duplicative work and excessive billing." *Schlacher v. L. Offs. of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009). But even that case resulted in early settlement and focused on one count.

For these reasons, then, the Court will not reduce the hours charged on this ground.

### b.      *YEW and Triple B*

Defendant challenges fees that arose from third parties, which total $147,234. (Doc. 170-1). For the following reasons, the Court reduces the hours billed with respect to these third parties by thirty percent. This reduces the fee award by $44,170.20.

As a preliminary matter, the Court notes that Y.E.W. intervened to recover funds from defendant that would be found payable to plaintiff. (Doc. 50-1, at 1). On April 5, 2022, the Court granted plaintiff's motion to bifurcate trial and to separate Y.E.W. for a separate trial with defendant. (Doc. 143). In granting the motion to bifurcate the trial, the Court noted:

> [T]he parties litigate two distinct disputes, the first between plaintiff and defendant, and the second between intervenor and defendant. Both intervenor and defendant have claims against Triple B, but it has defaulted and will not be part of any trial. There is no dispute between plaintiff and intervenor, nor between plaintiff and Triple B.

(Doc. 143, at 7). As the Court has thus noted, plaintiff has no dispute with Y.E.W or with Triple B. Further, Y.E.W. is not a party to the Subcontract that provides either party an entitlement "to recovery . . . including reasonable attorneys' fees and expenses, incurred in enforcing its rights under this Agreement." (Doc. 161-47, at 7). For these reasons, the Court will not include the hours plaintiff billed for work related to Triple B and Y.E.W in the fee award.

16

The Court notes, however, that the documentation provided prevents the Court from cleanly separating every moment devoted to Y.E.W. and Triple B from every moment devoted to litigation against defendant. Every entry that mentions Y.E.W., and many entries that mention Triple B, are block-billed in conjunction with tasks done for other parties. These submitted fee requests list numerous tasks performed in a set time period during the day, without clarifying how much time was spent on each individual task. As a result, the Court cannot exercise independent judgment on whether the time spent on any specific task regarding Y.E.W. or Triple B was reasonably expended. *See Dorr*, 741 F. Supp. 2d at 1037.

This Court has found that such "block billing" fails to comply with Local Rule 54A(a), which states, in relevant part: "[t]he claimed amount of attorney fees must be supported by an itemization that includes a detailed listing of the time claimed for each specific task and the hourly rate claimed." *Id.* Further, under Iowa and federal law, the Court may reduce an award for inadequate "documentation of hours[.]" *Smith*, 885 N.W.2d at 626 (citing *Hensley*, at 433). Although a party does not need to "record in great detail how each minute of his time was expended," a party must provide at a minimum sufficient documentation to "identify the general subject matter of [its] time expenditures." *Lee*, 906 N.W.2d at 196. (internal citations omitted). Here, although the records identify general subject matter, greater than the insufficient "'research charges' or 'Westlaw research charges,' sometimes followed by the amount of time[,]" *id.*, the Court cannot say that this is sufficient documentation, given that these records blend plaintiff's hours expended for parties that plaintiff had a dispute with and parties that plaintiff had no dispute with.

The Court has reduced hours across-the-board on this ground. *Dorr*, 741 F. Supp. at 1036 (collecting cases); *Jensen v. Clarke*, 94 F.3d 1191, 1203-04 (8th Cir. 1996) (affirming the district court's 10 percent across-the-board reduction for poor

17

documentation); *Houghton v. Sipco, Inc.*, 828 F. Supp. 631, 648 (S.D. Iowa 1993), *vacated on other grounds*, 38 F.3d 953 (8th Cir. 1994) (reducing fees by 15 percent in response to blockbilling and vagueness concerns). Here, the Court could reduce the fees claimed by ten percent. Unlike precedent above, however, the Court has found that plaintiff is not entitled at all to fees arising from Y.E.W. and Triple B. For that reason, the Court finds it appropriate to reduce the awarded fees by a greater amount. The Court thus reduces the hours billed related to those third parties by thirty percent.

### c.     *Redundant, Repetitive, and Excessive Pretrial Filings*

The Court does not reduce plaintiff's fee request on the grounds of defendant's challenge to "redundant, repetitive, and excessive pretrial filings." (Doc. 170, at 15).

The Court will not penalize plaintiff for a failure on its motion for reconsideration. Plaintiff was entitled to file that motion under federal law. Further, the mere fact that the prevailing party suffers a setback on its way to victory is not grounds to reduce attorneys' fees. *Smith*, 885 N.W.2d at 626–27. Further weighing against a penalty, both parties engaged in extensive motion practice before the Court before trial. *See generally Short v. Elliott Equip. Co.*, 912 N.W.2d 856 (Iowa Ct. App. 2018).

Nor will the Court reduce the award of attorneys' fees for "long briefs," as both parties filed over-length briefs with permission from the Court. Similarly, though defendant cites to *Schultz*, 2018 WL 9988204, at *4, as grounds that one party's failure to comply with the Local Rules should not be borne by the other party, plaintiff here did not increase its fee as a result of its Local Rule violation.

### 3.     *Accounting for Other Claims in Reasonableness*

Parties dispute whether the Court should reduce the attorneys' fees to reflect the Court's finding that the other claims do not give rise to recoverable attorneys' fees. Plaintiff asserts that the Court may properly exercise its discretion to award the entire fee because the claims are inextricably intertwined and involve a common core of facts or

18

are based on related legal theories. (Doc. 167-1, at 5-6). Plaintiff then asserts that claims are "inextricably intertwined" because the evidence would not have differed in any meaningful way. *Id.*, at 6. Defendant resists, arguing that the claims for promissory estoppel, fraud, and unjust enrichment are not inextricably intertwined because they require different proof and that the unity of evidence of the three contract claims means that they only deserve the hours of one contract claim. (Doc. 170, at 10).

For the following reasons, though this is a close call, the Court will not reduce plaintiff's attorneys' fees on this ground.

Iowa courts have adopted the *Hensley* framework on this issue. *Lee*, 906 N.W.2d at 200. When plaintiff's unsuccessful claims are unrelated to their successful claims, the Court may not award fees or costs obviously incurred in pursuing only the unsuccessful claims. *Lee v. State* (*Lee III*), 874 N.W.2d 631, 648–49 (Iowa 2016) (citing *Hensley*, 461 U.S. at 435). This holds true even when plaintiff succeeds on claims that nevertheless do not give rise to attorneys' fees. *Smith*, 885 N.W.2d at 625–26. The ultimate question is whether the work for which recovery is sought can be "deemed to have been 'expended in pursuit of' a claim for which attorney fees are recoverable." *Id.* (citing *Hensley*, 461 U.S. at 435 (further citations omitted)). The Court has "broad— but not limitless—discretion to determine the amount awarded to the prevailing party." *Lee*, 906 N.W.2d at 197. It "must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case." *Id.*

The Court cannot, however, always reduce fees on "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Hensley*, 461 U.S. at 435 n.11. An issue-by-issue reduction is likely permissible only when each claim "involved entirely separate legal questions or depended on separate issues of fact[.]" *See Emery*, 272 F.3d at 1045, 1047; *Lash v. Hollis*, 525 F.3d 636,

19

642 (8th Cir. 2008); *Lee*, 906 N.W.2d at 200. Instead, the Court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Lee III*, 874 N.W.2d at 649 (citing *Hensley*, 461 U.S. at 435). "The court may properly award any fees incurred in the litigation involving 'a common core of facts' or 'based on related legal theories.'" *Id.* "Nevertheless, the court ultimately must consider the reasonableness of the hours expended on the litigation as a whole in light of the degree of success actually obtained." *Id.* "When a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. "Again, the most critical factor is the degree of success obtained." *Id.*, at 436.

Smith is instructive on this matter. 885 N.W.2d at 624. There, the plaintiff could only recover fees for a statutory whistleblower claim out of litigation involving a separate common-law claim for emotional distress and separate legal proceedings. *Id.* The court eliminated the time unrelated to the statutory claim when that "unrelated time was not 'devoted generally to the litigation as a whole.'" *Id.* (quoting *Hensley*, 461 U.S. at 435). The court further held that when the plaintiff achieved "only 'partial or limited success' on the claim for which attorney fees are recoverable, a reduction in the fee award may be appropriate even if the entire lawsuit flows from a common core of facts." *Id.* In sum, then, the court found that attorneys' fees on every claim was improper when the plaintiff's counsel devoted time to "unrelated matters for which attorney fees [were] not authorized" and achieved "partial, limited success on the [claim] that [was] the only basis for awarding attorney fees[.]" *Smith*, 885 N.W.2d at 625.

Here, plaintiff prevailed on every claim it presented to the jury, but the Court found that only one claim gave rise to attorneys' fees. Thus, the lack of authorization on the attorneys' fees weighs against awarding fees on the other claims. *Smith*, 885 N.W.2d at 624.

Other factors, however, counsel against a reduction on a claim-by-claim basis. Again, the Court should focus "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Lee III*, 874 N.W.2d at 649. An issue-by-issue reduction is likely permissible only when each claim "involved entirely separate legal questions or depended on separate issues of fact[.]" *See Emery*, 272 F.3d at 104; *Lash*, 525 F.3d at 642.

Unlike in *Smith*, plaintiff here achieved full relief on every claim it presented to the jury: a judgment in its favor on every count, and an award of punitive damages on its fraud claim. Further unlike in *Smith*, every claim here arises out of a common core of facts; they centered on the Invoices, each governed by rules set out in the Subcontract, and email communications that concerned the payment of those Invoices. In addition, although not all the legal theories were identical, and although plaintiff needed different evidence for certain elements of certain claims, the legal theories were closely related. For example, although the fraud claim required more evidence of subjective "intent to deceive," the representations still arose out of email communications and were controlled by the Invoices and Subcontract. These are not entirely separate legal questions or issues of fact that merit a reduction on a claim-by-claim basis.

Therefore, though it is a close call, the Court will not reduce the fees awarded on this ground.

### III.    RECOVERING COSTS

Plaintiff also seeks to recover $42,149.25 in litigation costs. (Docs. 167, 167-1). Defendant resists these costs, first asserting that plaintiff waived these costs by failing to file a Bill of Costs within 14 days after entry of judgment, and second asserting that plaintiff was unreasonable in using Relativity as its e-Discovery platform. (Doc. 170, at 19). Plaintiff replies, asserting that FED. R. CIV. P. 54(d)(2) "does not require the filing of Form A.O. 133" and moving in the alternative for costs under Rule 54(d)(1), also

asserting that the Court may excuse a party from its failure to timely file under Local Rule 54(a)(1)(A) when it has otherwise timely provided an itemization of the costs expended. (Doc. 175) (citing *Lewis*, 764 F. Supp. 2d at 1047).

For the following reasons, the Court **grants-in-part** plaintiff's motion. The Court, exercising its discretion, excuses plaintiff from its failure to timely file form A.O. 133 under Local Rule 54(a)(1)(A) because it has otherwise timely provided an itemization of the costs expended. The Court, however, finds that the majority of plaintiff's costs are not taxable.

### A.    Waiver

Under Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Rule 54(d)(1) does not, however, provide a deadline for a request of costs as it does for attorneys' fees under Rule 54(d)(2). *Hudson v. Tyson Fresh Meats, Inc.*, No. 12-CV-2079-LRR, 2014 WL 2882629, at *1 (N.D. Iowa May 1, 2014).

Local Rule 54 establishes the local procedure for taxation of costs. *CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC*, No. 17-CV-25-CJW-KEM, 2019 WL 9143419, at *18 (N.D. Iowa Dec. 16, 2019). Local Rule 54(a)(1) states: "Within 14 days after entry of judgment, a party entitled to recover costs must complete and file an Administrative Office 133 form ("AO 133 form")[.]" *Id.*; LR 54(a)(1). Failure to file the . . . form by this deadline constitutes a waiver of the right to have costs taxed." *CRST Expedited, Inc.*, 2019 WL 9143419, at *18; LR 54(a)(1). The Bill of Costs Guidelines for the Northern District of Iowa ("Local Guidelines") additionally state that "[s]upporting documentation should be filed as attachments to that same event." *Id.* (citing Local Guidelines, at 2). "It is normally for the district court to enforce compliance with its local rules." *Drake v. Scott*, 812 F.2d 395, 401 (8th Cir. 1987).

22

Here, the Court entered judgment on this matter on April 25, 2022. (Doc. 165). Plaintiff was required, then, to file a form A.O. 133 and supporting documents by May 9, 2022. Plaintiff has not filed this form. That is grounds to deny this request. LR 54(a)(1)(A) ("Failure to file the AO 133 form by this deadline constitutes a waiver of the right to have costs taxed."); *see also Hudson*, 2014 WL 2882629, at *1.

Plaintiff argues that FED. R. CIV. P. 54(d)(2) "does not require the filing of Form A.O. 133." (Doc. 175, at 5) (citing LR 54). Rule 54(d)(2), however, does not apply to taxable costs, but to "attorney's fees and related nontaxable expenses[.]" FED. R. CIV. P. 54(d)(2). The Court instead analyzes the costs plaintiff requests under Rule 54(d)(1). *Hudson*, 2014 WL 2882629, at *1 ("[h]owever, Rule 54(d)(1) does not provide a deadline for a request of costs as it does for attorney's fees pursuant to Rule 54(d)(2).") Plaintiff then cites to Iowa law to assert that the Court determines "nontaxable costs[.]" (Doc. 175, at 5). The Court, however, does not follow Iowa law on this issue, because the requirements to recover costs are a matter of procedure.

As plaintiff notes, however, the Court may exercise its discretion and excuse a party from its failure to timely file form A.O. 133 under Local Rule 54(a)(1)(A) when it has otherwise timely provided an itemization of the costs expended. *See Lewis*, 764 F. Supp. 2d at 1047 (excusing the failure when the moving party provided itemized lists in its motion for attorneys' fees and thus did not deprive defendant of a chance to challenge them). Here, plaintiff provides an itemized list of costs up to $40,256 in Relativity and Westlaw fees and $1,893.05 in Complaint Filing Fees, Process Service Fees, Pro Hac Vice Filing Fees, Process Service on Bentley and Fronted Witness Fees for Bentley and Bryant, and a summary Exhibit Hearing Transcript Fee. (Docs. 167-2, at 40; 167-3, at 43).

Though plaintiff violated the Local Rules in failing to supply form A.O. 133, the Court finds that defendant has not been prejudiced by this violation. Specifically, the

costs have already been itemized in a manner sufficient for defendant to challenge them on the merits. The Court, thus, excuses plaintiff's failure to supply form A.O. 133 and will proceed to the merits.

### B.    Entitlement

Title 28, United States Code, Section 1920 states that the following six expenses are taxable as costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this [T]itle [28, United States Code, Section 1923];
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this [T]itle [28, United States Code, Section 1828].

*Kelly v. Ethicon, Inc.*, No. 20-CV-2036-CJW-MAR, 2021 WL 7185081, at *1 (N.D. Iowa Mar. 18, 2021).

"Section 1920 imposes 'rigid controls on cost-shifting in federal courts,' and 'absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's . . . costs, federal courts are bound by the limitations set out in' [S]ection 1920." *Nicholson v. Biomet, Inc.*, 537 F. Supp. 3d 990, 1036 (N.D. Iowa 2021), *aff'd*, 46 F.4th 757 (8th Cir. 2022) (internal citations omitted) (alterations in original). If Section 1920 does not discuss a subject that could encompass the requested fees, the Court does not permit recovery of those fees. *Id.*

Defendant challenges plaintiff's costs of Relativity as e-Discovery, labelling Relativity as a "high-end, top-of-the-line e-discovery service" the use of which "unreasonably drove up the costs." (Doc. 170, at 19). Plaintiff defends its use of

Relativity due to the high volume of documents and emails. (Doc. 175, at 5). The question, however, is not of the reasonableness of the costs but of whether Section 1920 encompasses the requested fees for cost purposes. The Court finds that the $40,256 in Relativity and research fees (Doc. 167-2, at 39-41) do not.

Other courts examining the use of e-discovery software have limited the taxation of costs to activities encompassed by Section 1920, such as the conversion of native files to TIFF and the scanning of documents to create digital duplicates. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 167 (3d Cir. 2012) (collecting cases). Here, the Court does not recognize any costs arising out of the use of Relativity that focus on the conversion of native files or the scanning of documents to create digital duplicates. (Doc. 167-3, at 40). Similarly, Section 1920 does not encompass online legal research fees. *See, e.g.*, *Panico v. Ygsl Holdings LLC*, No. 12-61269-CIV-COHN/SELTZER, 2013 WL 12092116, n.2. (S.D. Fla. Apr. 5, 2013) ("Plaintiff requests Westlaw fees . . . for online legal research [and] PACER fees . . . for accessing the Court's docket . . . As there is no explicit authorization to grant these costs under § 1920, they are not recoverable.") (alteration in original). For that reason, the Court will not award the requested $40,256 in Relativity and research fees.

The Court finds that the aggregate $1,893.05 stemming from the Complaint Filing Fee, Process Service Fees, Pro Hac Vice Filing Fees, Process Service and Fronted Witness Fees for Bentley and Bryant, and a summary Exhibit Hearing Transcript Fee (Doc. 167-3, at 42), satisfy Section 1920, between fees for filing, fees for witnesses, and fees for the transcripts. Therefore, the Court will tax these costs.

For that reason, plaintiff is entitled to $1,893.05 in costs.

25

## IV. CONCLUSION

For the above reasons, plaintiff's motion for attorneys' fees and costs (Doc. 167) is **granted-in-part.** The Court awards plaintiff **$641,780.80** in attorneys' fees and taxes **$1,893.05** in costs for plaintiff.

**IT IS SO ORDERED** this 26th day of October, 2022.

C.J. Williams
United States District Judge
Northern District of Iowa